IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JENNIFER STEINBOOK,

        Plaintiff,

vs.                                                                     1:20-cv-00534-LF

KILOLO KIJAKAZI,[1] Acting Commissioner
of the Social Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Jennifer Steinbook's Motion to

Reverse and/or Remand (Doc. 20), which was fully briefed on July 21, 2021.  *See* Docs. 24–26.

The parties consented to my entering final judgment in this case.  Docs. 4, 6, 7.  Having

meticulously reviewed the entire record and being fully advised in the premises, I find that Ms.

Steinbook's motion is not well-taken, and it will be DENIED.

## I.      Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final

decision[2] is supported by substantial evidence and whether the correct legal standards were

applied.  *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008).  If substantial evidence supports

the Commissioner's findings and the correct legal standards were applied, the Commissioner's

decision stands, and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116,

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as the defendant in this action.  FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

1118 (10th Cir. 2004).  "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).  The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.*  While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.     Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process.  20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the evaluation process, the claimant must show:  (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61.  If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience.  *Id.*

## III.    Background and Procedural History

Ms. Steinbook was born in 1975, earned an associate's degree in accounting, and worked as an accounts payable representative, in call centers, as a phlebotomist, and as a tax preparer.  AR 55–64, 79–80, 249, 283–84.[4]  Ms. Steinbook filed an application for Disability Insurance Benefits ("DIB") on October 18, 2017, alleging disability since February 10, 2014 due to

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Documents 16-1 through 16-11 comprise the sealed Administrative Record ("AR").  When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

spondylolisthesis[5] requiring L5-S1 fusion, anxiety, major depression, bipolar disorder, attention

deficit disorder, prediabetes, peripheral neuropathy, obsessive-compulsive disorder, post-

traumatic stress disorder, and morbid obesity.  AR 249–50, 282.  The Social Security

Administration ("SSA") denied her claim initially on March 9, 2018.  AR 152–55.  The SSA

denied her claims on reconsideration on August 16, 2018.  AR 159–64.  Ms. Steinbook requested

a hearing before an ALJ.  AR 165–66.  On April 4, 2019, ALJ Lillian Richter held a hearing.

AR 37–95.  ALJ Richter issued her unfavorable decision on August 20, 2019.  AR 16–36.

The ALJ found that Ms. Steinbook met the insured requirements of the Social Security

Act through September 30, 2023.  AR 21.  At step one, the ALJ found that Ms. Steinbook had

not engaged in substantial, gainful activity since February 10, 2014, her alleged onset date.  *Id*.

At step two, the ALJ found that Ms. Steinbook suffered from the following severe impairments:

> degenerative disc disease of the lumbar spine with radiculopathy, bilateral
> spondylosis and foraminal stenosis lumbar spine; radiculitis, lumbar instability,
> neuropathy, chronic pain (status post lumbar fusion); morbid obesity; obstructive
> sleep apnea; bipolar disorder; adjustment disorder with anxiety; generalized
> anxiety disorder; attention-deficit/hyperactivity disorder (ADHD); and
> posttraumatic stress disorder (PTSD)(20 CFR 404.1520(c)).

AR 22.

At step three, the ALJ found that none of Ms. Steinbook's impairments, alone or in

combination, met or medically equaled a Listing.  AR 23–25.  Because the ALJ found that none

of the impairments met a Listing, the ALJ assessed Ms. Steinbook's RFC.  AR 25–29.  The ALJ

found Ms. Steinbook had the RFC to

> perform sedentary work as defined in 20 CFR 404.1567(a) except she can
> occasionally balance, kneel, crouch, and climb ramps and stairs, and she . . . can
> never stoop, crawl, or climb ladders, ropes, or scaffolds.  She can perform simple

---

[5] "Spondylolisthesis is a condition in which a bone (vertebra) in the spine moves forward out of
the proper position onto the bone below it."  *Spondylolisthesis*, Medline Plus (available at
https://medlineplus.gov/ency/article/001260.htm) (last visited Jan. 6, 2022).

routine work.  She can have occasional interaction with supervisors and coworkers and no interaction with members of the public.  She can perform work in a workplace with few changes in the routine work setting, cannot perform assembly line production work, and cannot perform work in tandem with other employees.

AR 25.

At step four, the ALJ concluded that Ms. Steinbook could not perform any of her past relevant work as a phlebotomist, accounts payable representative, or call center worker.  AR 29. The ALJ found Ms. Steinbook not disabled at step five because she could perform jobs that exist in significant numbers in the national economy—such as circuit board screener, cigar head piercer, buckler and lacer, addresser, and cutter and paster.  AR 30–31.  On September 23, 2019, Ms. Steinbook requested that the Appeals Council review the ALJ's unfavorable decision.  AR 246–48.  Ms. Steinbook submitted additional evidence to the Appeals Council.  AR 7–10, 96–119.  On May 12, 2020, the Appeals Council denied the request for review.  AR 1–6.  Ms. Steinbook timely filed her appeal to this Court on June 3, 2020.[6]  Doc. 1.

## IV.    Ms. Steinbook's Claims

Ms. Steinbook raises four arguments for reversing and remanding this case:  (1) the ALJ failed to properly weigh the opinions of her treating orthopedic physician, Dr. Andrew Paterson; (2) the ALJ failed to properly weigh the opinions of her treating psychiatric nurse practitioner, CNP Christine Gilmore; (3) the Appeals Council erred in failing to consider examining source Dr. Steven Baum's opinions; and (4) the ALJ failed to properly consider her symptoms in light of the impact her depression, anxiety, and obesity have on her pain.  Doc. 20 at 24–28.  For the reasons explained below, the Court finds that none of these arguments have merit.

---

[6] A claimant has 60 days to file an appeal.  The 60 days begins running five days after the decision is mailed.  20 C.F.R. § 404.981; *see also* AR 2–3.

## V.     Analysis

### A.  The ALJ did not err in assessing the medical opinions of Dr. Paterson or CNP Gilmore.

Ms. Steinbook filed her application for DIB on October 18, 2017.  AR 249–50.

Therefore, the significantly revised regulations pertaining to medical opinion evidence apply to

this case.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg.

5844 (Jan. 18, 2017).  For claims filed on or after March 27, 2017, all medical sources can

provide evidence that is categorized and considered as medical opinion evidence and subject to

the same standard of review.  20 C.F.R. § 404.1520c ("How we consider and articulate medical

opinions and prior administrative medical findings for claims filed on or after March 27, 2017.").

Pursuant to the new regulations, the SSA "will not defer or give any specific evidentiary weight,

including controlling weight, to any medical opinion(s) or prior administrative medical

finding(s), including those from [the claimant's] medical sources."  20 C.F.R. § 404.1520c(a).[7]

The new regulation sets forth five factors the SSA will consider in evaluating medical

opinions:

> (1) Supportability.  The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) Consistency.  The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

---

[7] In the "Law" section of her brief, Ms. Steinbook asserts that the treating physician rule survives the SSA's March 27, 2017 revisions to its regulations. Doc. 20 at 22–23.  However, Ms. Steinbook does not rely on these assertions in the argument section of her brief.  *See id*. at 24–26. The Court, therefore, does not reach this issue, as it would be purely advisory, and it does not affect the Court's analysis of Ms. Steinbook's actual arguments.  *See also* FN 8, *infra*.

(3) Relationship with the claimant.  This factor combines consideration of the issues in paragraphs (c)(3)(i) through (v) of this section.

  (i) Length of the treatment relationship.  The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

  (ii) Frequency of examinations.  The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

  (iii) Purpose of the treatment relationship.  The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s).

  (iv) Extent of the treatment relationship.  The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s).

  (v) Examining relationship.  A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.

(4) Specialization.  The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

(5) Other factors.  We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding.  This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements.  When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.

20 C.F.R. § 404.1520c(c).

  The new SSA regulations impose three "articulation requirements" when an ALJ

considers medical opinion evidence.  *See* 20 C.F.R. § 404.1520c(b).  First, "when a medical

source provides multiple medical opinion(s)," the ALJ need not articulate how he or she considered each individual medical opinion; rather, the ALJ "will articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis." 20 C.F.R. § 404.1520c(b)(1).  Second, while an ALJ must consider five factors when evaluating medical opinion evidence, *see* 20 C.F.R. § 404.1520c(c)(1)–(5), the ALJ is generally only required to articulate his or her consideration of two of those factors:  "[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions . . . in your determination or decision." 20 C.F.R. § 404.1520c(b)(2).  Finally, if differing medical opinions are equally well-supported and consistent with the record, the ALJ must then "articulate how [he or she] considered the other most persuasive factors . . . for those medical opinions." 20 C.F.R. § 404.1520c(b)(3).

The new regulations do not alter the standard of review; ultimately, the relevant question is whether the SSA's decision complies with the regulations and is supported by substantial evidence.  *See Zhu v. Commissioner, SSA*, No. 20-3180, 2021 WL 2794533, at *6 (10th Cir. July 6, 2021) (unpublished) ("The ALJ complied with this regulatory framework and his evaluations of the pertinent medical opinions are supported by substantial evidence.").  In addition, the nature of substantial-evidence review has not changed in light of the new regulations.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).  Finally, the decision below must provide the Court "with a sufficient basis to determine that appropriate legal

principles have been followed." *Jensen*, 436 F.3d at 1165 (internal quotation marks omitted).

### a. Dr. Paterson

Ms. Steinbook argues that the ALJ committed legal error by failing to adequately consider the factors used in deciding what "weight" to give to the opinions of her treating orthopedic physician, Dr. Andrew Paterson.  Doc. 20 at 24–25.  She further argues that the ALJ failed to "meaningfully consider [Dr. Paterson's] opinions as well as the evidence that supports and detracts from [the] supportability and consistency" of his opinion.  Doc. 25 at 7–8.  Finally, she argues that the reasons the ALJ gave for discounting Dr. Paterson's opinions are not supported by substantial evidence.  Doc. 20 at 24–25.  The Commissioner argues that the ALJ did not commit legal error, and properly evaluated Dr. Paterson's opinions under the SSA's regulations applicable to claims filed after March 27, 2017.  Doc. 24 at 12, 16–17.  The Commissioner argues that the ALJ "evaluated [Dr. Paterson's opinions'] persuasiveness and articulated her consideration of the supportability and consistency factors.  Nothing more was required."  *Id*. at 17.  I agree with the Commissioner.

On March 4, 2019, Dr. Paterson completed a Medical Source Statement:  Physical Limitations.  AR 1071–75.  Dr. Paterson opined that Ms. Steinbook could walk less than one city block without rest or severe pain; could sit for a maximum of 30 minutes at a time before needing to get up (per patient); could stand for a maximum of 30 minutes at one time before needing to sit down or walk around; could sit and stand/walk less than two hours in an 8-hour workday; needed to walk around for 10 minutes every 30 minutes; required a job that allowed shifting at will from sitting, standing, or walking; would require unscheduled breaks once every hour for approximately ten minutes; could lift less than ten pounds occasionally, could lift ten pounds rarely, and could never lift 20 pounds or 50 pounds; could occasionally look down, up, or

hold head in static position; could rarely twist, stoop (bend), or climb stairs; and could never

crouch/squat or climb ladders.  AR 1071–74.  As part of his assessment, Dr. Paterson noted that

Ms. Steinbook had the following symptoms:  "chronic low back pain; chronic radiating nerve

pain & sensory changes in left leg."  AR 1071.  He noted that her pain was constant and that it

worsened with activity.  *Id*.  Finally, Dr. Paterson noted the following clinical and objective signs

supporting his assessment:  "pain/tenderness with palpation across lumbosacral junction."  *Id*.

> The ALJ analyzed the persuasiveness of Dr. Paterson's opinions as follows:

> Following lumbar surgery, the claimant's provider indicated that the claimant
> should avoid excessive bending, twisting, or lifting and that she should use a
> walker if she feels unsteady (Exhibit 6F, p. 40).  These statements appear to be
> postoperative instructions and not an assessment of long-term limitations;
> however, the provider supported statement with examination.  The use of a walker
> is inconsistent with the evidence showing generally unremarkable gait and no use
> of an assistive device, and the extent of the postural limitations is unclear;
> however, some degree of ambulatory and postural limitation is consistent with the
> evidence showing history of surgery, abnormal imaging results, and BMI over 50.
> Therefore, the undersigned finds this opinion persuasive for the period
> immediately following the surgery and for the presence of postural limitations;
> however, the undersigned does not find the ambulatory limitations persuasive.

> The claimant's medical provider stated that the claimant could rarely lift ten
> pounds, could sit, stand, and walk for less than two hours in an eight-hour
> workday, required changes in position every hour, could never crouch or squat,
> and could rarely twist or stoop (Exhibit 13F, pp. 1-4).  The provider did not
> support the assessment with explanation or citation to the medical evidence of
> record.  Additionally, the severity of the limitations is inconsistent with the
> evidence generally showing effective treatment, independent gait, intact transfer,
> intact motor function, and intact range of motion (Exhibits 5F, p. 3; 6F, pp. 22,
> 28; 16F, pp. 81, 229; 22F, pp. 4, 77).  Therefore, the undersigned does not find
> this opinion persuasive.

AR 28.

Ms. Steinbook argues that the ALJ committed legal error by failing to discuss all the

factors used to evaluate medical opinions.  Doc. 20 at 25.  Ms. Steinbook further argues that the

ALJ failed to consider Dr. Paterson's opinions "in light of the *Goatcher* factors." *Id.*[8]  These arguments are without merit.

The *Goatcher* factors are the factors found in 20 C.F.R. § 404.1527(d)(2)–(6).  *Goatcher v. U.S. Dep't of Health & Hum. Servs.*, 52 F.3d 288, 290 (10th Cir. 1995).  These regulations do not apply to claims filed after March 27, 2017.  *See* 20 C.F.R. § 404.1527 ("For claims filed . . . before March 27, 2017, the rules in this section apply.  For claims filed on or after March 27, 2017, the rules in § 404.1520c apply.).  Because Ms. Steinbook filed her claim after March 27, 2017, the Court must look to 20 C.F.R. § 404.1520c in assessing whether the ALJ committed legal error.  The new regulations only require the ALJ to articulate how she considered the factors of supportability and consistency.  20 C.F.R. § 404.1520c(b)(2).  The ALJ discussed the supportability of Dr. Paterson's opinions.  AR 28 ("The provider did not support the assessment with explanation or citation to the medical evidence of record.").  The ALJ also discussed the consistency of Dr. Paterson's opinions.  *Id.* ("[T]he severity of the limitations is inconsistent with the evidence generally showing effective treatment, independent gait, intact transfer, intact motor function, and intact range of motion . . . .").  The ALJ was not required to discuss the other factors unless there were differing medical opinions on an issue and those opinions are equally well-supported and consistent with the record.  20 C.F.R. § 404.1520c(b)(2), (3).  Ms. Steinbook does not point to differing medical opinions that are equally well-supported and consistent that

---

[8] Ms. Steinbook's reliance on the "*Goatcher* factors" does not put her assertion that the treating physician rule survives the SSA's adoption of new regulations before the Court.  The "*Goatcher* factors" are found in the SSA's regulations; they are not factors promulgated by the Court for considering treating physician opinions.  *See Goatcher v. U.S. Dep't of Health & Hum. Servs.*, 52 F.3d 288, 290 (10th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)–(6)).  In addition, Ms. Steinbook admits in her reply that she "does not assert that the ALJ must give controlling weight to any physician opinion." Doc. 25 at 2.  Instead, she argues only that "the ALJ is required to meaningfully consider opinions as well as the evidence that supports and detracts from supportability and consistency." *Id.*

would trigger the ALJ's duty to discuss these other factors.  The Court perceives no legal error in

the ALJ's legal analysis of Dr. Paterson's opinions under the applicable factors.

Ms. Steinbook also asserts that the ALJ failed to provide substantial evidence for the

degree of persuasiveness assigned to Dr. Paterson's opinions.  This argument also is without

merit.  Ms. Steinbook argues that "[t]he ALJ's only rationale for disregarding all of Dr.

Paterson's opinions is that he does not explain his opinions or cite to supporting evidence and the

evidence generally shows no significant problems after surgery."  Doc. 20 at 24 (citing AR 28).

While this opening salvo seems to attack the ALJ's assessment of both the supportability and

consistency factors, the rest of her argument attacks only the supportability factor.  She argues

that Dr. Paterson adequately supports his opinions because:  (1) he "refers to physical

examination findings that support his opinions[,]" and "documents the treatment he provides and

the nat[]ure of [her] pain"; (2) he clearly differentiates between opinions founded on "subjective

complaints" versus those "based on his observations"; and (3) he explains that "anxiety worsens

her constant pain."  Doc. 20 at 24.  The Court agrees that the ALJ's discussion of supportability

in the paragraphs discussing Dr. Paterson's opinions could have been more explicit.  However,

the ALJ also discussed Dr. Paterson's physical examination findings and treatment notes

elsewhere in the RFC analysis:

> Although the evidence shows degenerative disc disease of the lumbar spine with
> radiculopathy, radiculitis, instability, chronic pain, and neuropathy (status post
> lumbar fusion), it shows effective treatment, independent gait, and no loss of
> motor function (Exhibits 2F, p. 22; 3F, p. 5; 4F, pp. 12, 16, 38, 47).  Furthermore,
> the claimant reported that she could drive a motor vehicle, go out alone, and shop
> in stores (Exhibit 5E, p. 5).  Finally, while before surgical treatment the evidence
> showed tenderness to palpation and decreased sensation along the L5 distribution,
> it generally showed independent gait, intact ability to sit, and no loss of motor
> function; and following lumbar surgery, the evidence shows significant
> improvement (Exhibits 2F, p. 17; 5F, p. 19; 6F, pp. 36, 42; 10F, p. 6).

For example, before lumbar surgery, imaging of the lumbar spine showed degenerative changes at L5-S1, with impingement of the L5 nerve root, right paracentral chronic disc protrusion, and grade 1 anterolisthesis; however, it showed minimal osteophytes, no compression, and no significant interval change (Exhibits 3F, pp. 72-73; 5F, p. 31; 6F, p. 38).  Following lumbar fusion on January 23, 2015, imaging showed aligned hardware, no surgical complications, maintained vertebral body heights, and only trace listhesis, and EMG was unremarkable, with no radiculopathy or neuropathy (Exhibits 3F, p. 64; 4F, p. 12; 6F, pp. 38, 47; 16F, p. 249).

Following surgery, the claimant's providers referred the claimant to physical therapy and prescribed Vicodin, Klonopin, Flexeril, and Lyrica, and the evidence shows controlled pain and improved radiculopathy (Exhibits 5F, p. 60; 6F, pp. 22, 29, 30; 16F, p. 79; 18F, p. 6; 22F, pp. 74, 77, 94, 96, 116).  For example, while physical examinations continue to show slightly decreased sensation along the left L5 nerve distribution, they generally show intact transfer, full range of motion, full strength, intact sensation, intact reflexes, and no tenderness to palpation (Exhibits 5F, p. 3; 6F, pp. 22, 28; 16F, pp. 81, 229; 22F, pp. 4, 77).  Additionally, while the claimant's providers prescribed a walker for optional use, the evidence shows no use of assistive devices and generally shows unremarkable gait and station (Exhibits 6F, p. 22; 7F, p. 5; 8F, p. 20; 16F, p. 99; 21F, p. 11; 22F, pp. 77, 96).

AR 26–27.

This discussion analyzes the same diagnoses (L5-S1 degenerative changes and radiculopathy), symptoms (pain, sensory changes in left leg), clinical findings (tenderness to palpation) and treatment (physical therapy, injections, surgery) that Dr. Paterson used to support his opinions.  Reading the ALJ's decision as a whole, the Court concludes that the ALJ's consideration of Dr. Paterson's opinion is supported by substantial evidence.

Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal.  In conducting our review, we should, indeed must, exercise common sense.  The more comprehensive the ALJ's explanation, the easier our task; but we cannot insist on technical perfection.

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012); *see also* 82 Fed. Reg. 5844, 5853 (In abrogating the treating physician rule, the SSA noted that its former regulations caused

courts to be too focused on whether the SSA "sufficiently articulated the weight [it] gave treating source opinions, rather than on whether substantial evidence support[ed] [its] final decision.").

Finally, the Court notes that Ms. Steinbook does not challenge the ALJ's discussion of the consistency of Dr. Paterson's opinion.  The ALJ found Dr. Paterson's opinion was not persuasive because "the severity of the limitations is inconsistent with the evidence generally showing effective treatment, independent gait, intact transfer, intact motor function, and intact range of motion (Exhibits 5F, p. 3; 6F, pp. 22, 28; 16F, pp. 81, 229; 22F, pp. 4, 77)."  AR 28. Ms. Steinbook does not challenge this analysis, and therefore concedes that Dr. Paterson's opinion is inconsistent with the record.  Thus, even if the ALJ had erred in finding Dr. Paterson's opinions not persuasive on supportability grounds (which the Court does not conclude), the ALJ also found Dr. Paterson's opinion not persuasive on consistency grounds.  20 C.F.R. § 404.1520c(c)(2).

### b.  CNP Gilmore

Ms. Steinbook argues that the ALJ failed to properly "weigh" the opinions of her treating psychiatric nurse practitioner, Christine Gilmore, CNP.  Doc. 20 at 25–26.  She argues that the ALJ failed to give legitimate reasons for discounting CNP Gilmore's opinions, and that the ALJ impermissibly cherry-picked evidence to support a finding of non-disability.  *Id*.  The Commissioner argues that the ALJ properly evaluated the persuasiveness of CNP Gilmore's opinions and adequately discussed the supportability and consistency of her opinions and "[n]othing more was required."  Doc. 24 at 17–19.  I agree with the Commissioner.  Ms. Steinbook demonstrates neither legal error nor a lack of substantial evidence.

CNP Gilmore completed a Medical Source Statement:  Mental Limitations about Ms. Steinbook on March 29, 2019.  AR 1076–80.  CNP Gilmore noted that she had been Ms.

Steinbook's treating provider for five visits by the time she completed the statement.  AR 1076.
CNP Gilmore also noted that the clinical findings supporting her opinions included "emotional
lability, chronic anxiety, hypervigilance, frequent anger outbursts and crying spells."  *Id*.  She
further noted a number of "signs and symptoms" supporting her opinions.  *See* AR 1077.  CNP
Gilmore opined that Ms. Steinbook was "seriously limited, but not precluded" in her abilities to
sustain an ordinary routine without special supervision, work in coordination with or proximity
to others without being unduly distracted, and accept instruction and respond appropriately to
criticism from supervisors.  AR 1078.  CNP Gilmore also opined that Ms. Steinbook was "unable
to meet competitive standards" in her abilities to remember work-like procedures; maintain
attention for a two-hour segment; maintain regular attendance and be punctual within customary,
usually strict tolerances; complete a normal work day and work week without interruptions from
psychologically-based symptoms; perform at a consistent pace without an unreasonable number
and length of rest periods; respond appropriately to changes in a routine work setting, deal with
normal work stress, and be aware of normal hazards and take appropriate precautions; travel in
unfamiliar places; and use public transportation.  AR 1078–79.[9]  CNP Gilmore stated that she
based these limitations on Ms. Gilmore's "verbal history of previous work encounters.  She
responds poorly to stressful situations including changes in routine, criticism from supervisors,
fast pace and interpersonal conflicts."  *Id*.  CNP Gilmore opined that Ms. Steinbook would be
absent four or more days per month due to her impairments.  AR 1080.

     In analyzing the persuasiveness of CNP Gilmore's opinions, the ALJ stated that:

> The claimant's mental health provider indicated that the claimant was unable to
> meet competitive standards and would miss about four days of work per month

---

[9] CNP Gilmore also opined on limitations affecting Ms. Steinbook's abilities to perform skilled
and semi-skilled work.  *See* AR 1079.  Because the ALJ limited Ms. Steinbook to unskilled
work, the Court does not discuss these limitations.

> (Exhibit 14F, pp. 1-5).  The provider supported her assessment with some explanation; however, she did not cite to any objective evidence, she indicated that the first encounter was over four years after the alleged onset date, and she stated that she based limitations on the claimant's subjective reports.  Furthermore, the limitations are inconsistent with the evidence showing no hospitalizations, effective treatment, cooperative behavior, appropriate affect, unremarkable thought content, correct orientation, and normal fund of knowledge (Exhibits 3F, p. 43; 5F, p. 64; 8F, p. 32; 21F, p. 5). Therefore, the undersigned does not find this opinion persuasive.

AR 28.  The Court perceives no legal error in the ALJ's analysis of the persuasiveness of CNP Gilmore's opinions.  The ALJ discussed both the supportability and consistency of CNP Gilmore's opinions, and cited evidence in support of her conclusions.  *See* 20 C.F.R. § 404.1520c(b)(2).

Ms. Steinbook's claim that the ALJ "cherry picked" evidence that would support a finding of non-disability is without merit.  Ms. Steinbook argues that the ALJ never considered "Sage Neuroscience's abnormal findings in evaluating Ms. Gilmore's opinions."  Doc. 20 at 26.  Ms. Steinbook does not cite these "abnormal findings," but instead only cites generally to 47 pages of records from Sage Neuroscience.  *Id*. at 25–26.  When assessing the supportability and consistency of a medical source's opinions, the ALJ cannot "pick and choose among medical reports," using only portions of evidence that are favorable to his or her position and disregarding those that are not.  *Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004).  This requirement, though, does not mean that the ALJ must discuss every piece of controverted evidence.  *See Clifton*, 79 F.3d at 1009–10.  Rather, it merely requires the ALJ to show that he or she considered evidence unfavorable to his or her findings before making them.  *See id*.  Here, the ALJ did not cherry pick evidence to support a finding of non-disability.  The ALJ thoroughly discussed the evidence pertaining to Ms. Steinbook's mental diagnoses and limitations.  *See* AR 27 (ALJ's explanation of how she arrived at the mental RFC, including a myriad of citations to

the evidence); AR 28 (ALJ's analysis of CNP Gilmore's opinions). The ALJ specifically referenced the records for Sage Neuroscience in these analyses. *See* AR 27 (referencing Exhibits 8F, p. 7; 8F, p. 32, 8F, p. 57) and AR 28 (referencing Exhibit 8F p. 32). The ALJ repeatedly referenced the records from Sage Neuroscience, which leads the Court to conclude that the ALJ adequately considered these records before making her findings. In addition, Ms. Steinbook fails to point to any specific findings in these records that the ALJ failed to consider. The Court therefore sees no legal error in the ALJ's consideration of CNP Gilmore's opinions.

Absent a showing of legal error, Ms. Steinbook must show that the ALJ's analysis of CNP Gilmore's opinions is not supported by substantial evidence. Ms. Steinbook fails to make this showing. Ms. Steinbook takes umbrage with the reasons the ALJ gave for finding CNP Gilmore's opinion unsupported and inconsistent with the evidence of record. *See* Doc. 20 at 25–26. Having reviewed all the reasons the ALJ gave for finding CNP Gilmore's opinion unpersuasive, the Court concludes that the ALJ's analysis is supported by substantial evidence.

Ms. Steinbook argues that the ALJ erred in discrediting CNP Gilmore's opinion because the opinion did "not cite to objective evidence." Doc. 20 at 25 (citing AR 28). She points out that CNP Gilmore noted that the clinical findings supporting her opinions included "emotional lability, chronic anxiety, hypervigilance, frequent anger outbursts and crying spells," and that these clinical findings constitute objective evidence. *Id*. The Court agrees that these findings are objective evidence.[10] However, while the ALJ did not discuss this objective evidence in her analysis of CNP Gilmore's opinion, the Court finds that the ALJ adequately discussed this objective evidence elsewhere in the decision. In her analysis of Ms. Steinbook's mental RFC,

---

[10] A psychological opinion need not be based solely on objective tests, but "may rest either on observed signs and symptoms or on psychological tests." *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004).

the ALJ referred to the three objective mental status examinations CNP Gilmore performed on

Ms. Steinbook and the abnormal findings noted in these examinations. *See* AR 27 ("During

exacerbations, mental status examinations have shown limited memory, dysphoric and anxious

mood, tearful affect, tangential thought process, impaired concentration, and limited insight and

judgment. (Exhibits 8F, p. 57; 18F, p. 6, 21F, pp. 5, 11, 17).").[11]  The ALJ adequately explained

why these objective exam findings did not support any greater RFC limitations. *See* AR 27

("However, with treatment, examinations generally show intact memory, unremarkable thought

process, intact speech, normal eye contact, cooperative behavior, appropriate affect,

unremarkable thought content, correct orientation, intact concentration, normal fund of

knowledge, and appropriate grooming.  (Exhibits 3F, p. 43; 5f, p. 64; 8F, p. 32; 21F, p. 5).").

While the ALJ could have included more detail in her discussion of CNP Gilmore's opinions, the

Court is able to follow the ALJ's reasoning. *See Keyes-Zachary*, 695 F.3d at 1166 (reversal not

warranted as long as court can follow ALJ's reasoning and determine that correct legal standards

were applied; technical perfection is not required).

     Ms. Steinbook next argues that the ALJ erred in discounting CNP Gilmore's opinion

because she "indicated that the first encounter was over four years after the alleged onset date."

Doc. 20 at 25.  Ms. Steinbook argues that CNP Gilmore's March 29, 2019 opinion was relevant

to the time period under the ALJ's consideration—between February 10, 2014 (her alleged onset

date) and August 20, 2019 (the date the ALJ issued her decision).[12]  The Commissioner argues

that the ALJ's statement merely means that the ALJ found that CNP "Gilmore's opinion could

illuminate [Ms. Steinbook's] condition for only a small portion of the relevant time period."

---

[11] CNP Gilmore's treating records are found in Exhibit 21F, AR 1562–80.

[12] The ALJ found that Ms. Steinbook met the insured requirements of the Social Security Act
through September 30, 2023.  AR 21.

Doc. 24 at 18.  The Court agrees with the Commissioner's interpretation.  The ALJ is tasked with

explaining how persuasive she finds the medical opinions.  *See* 20 C.F.R. § 404.1520c(b)(2).

One of the factors the ALJ may consider in assessing the persuasiveness of opinions is the length

of the treating relationship.  20 C.F.R. § 404.1520c(c)(3)(i).  The Court sees no error in the ALJ

considering the amount of time CNP Gilmore treated Ms. Steinbook in assessing the overall

persuasiveness of her opinions.

Finally, Ms. Steinbook argues that the ALJ erred in discounting CNP Gilmore's opinion

because it was based on Ms. Steinbook's subjective reports.  Doc. 20 at 26.  However, the ALJ's

finding that CNP Gilmore "stated that she based limitations on [Ms. Steinbook's] subjective

reports" is well supported by the record.  CNP Gilmore's opinion states that the limitations were

"[p]er [Ms. Steinbook's] verbal history," AR 1078, and "based on [Ms. Steinbook's] reported

history," AR 1079.  And, as the Commissioner points out, CNP Gilmore herself noted that her

opinion was premised largely on Ms. Steinbook's self-reported limitations.  *See* AR 1575 (CNP

Gilmore noted that she filled out the opinion form "to the best of [her] knowledge of the patient

and had to take subjective information from the patient throughout the visit because my own

psychological evaluations over this past year as I have known the patient has not included any

detailed cognitive and functioning neuropsychological evaluation."); AR 1559 ("there are likely

shortcomings because I did not formally test her learning in a way that would translate to job

performance").  The Court finds no error in the ALJ considering this information in determining

the persuasiveness of CNP Gilmore's opinion.

In addition, the ALJ gave numerous reasons why she found CNP Gilmore's opinion

inconsistent with the record.  *See* AR 28 ("[T]he limitations are inconsistent with the evidence

showing no hospitalizations, effective treatment, cooperative behavior, appropriate affect,

unremarkable thought content, correct orientation, and normal fund of knowledge (Exhibits 3F, p. 43; 5F, p. 64; 8F, p. 32; 21F, p. 5.").  Ms. Steinbook does not challenge these reasons for finding CNP Gilmore's opinion unpersuasive.  The Court finds that the ALJ's reasons for finding CNP Gilmore's opinion unpersuasive are supported by substantial evidence.  The Court discerns no error in the ALJ's treatment of CNP Gilmore's opinion.

### B. The Appeals Council did not err in finding Dr. Baum's opinion did not qualify for consideration.

The ALJ issued her unfavorable decision on August 20, 2019.  AR 16–36.  Thereafter, Ms. Steinbook submitted additional evidence to the Appeals Council, requesting that it consider an October 7, 2019 Medical Source Statement of Ability to do Work-Related Activities (Mental) from Dr. Steven Baum.  AR 7–10.  The Appeals Council determined that this additional evidence did "not show a reasonable probability that it would change the outcome of the decision."  AR 2.  As a result, the Appeals Council "did not exhibit this evidence."  *Id*.

Whether evidence qualifies for consideration by the Appeals Council is a question of law subject to *de novo* review.  *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003).  The Appeals Council must review additional evidence if it "is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision."  20 C.F.R. § 404.970(a)(5) (effective Jan. 17, 2017 to Dec. 15, 2020).[13]  Evidence is new "if it is not duplicative or

---

[13] The regulations in effect at the time the Appeals Council declined review required the claimant to show "good cause" for failure to submit the evidence earlier.  20 C.F.R. § 404.970(b) (effective Jan. 17, 2017 to Dec. 15, 2020).  If the Appeals Council "does not find [the claimant] had good cause for missing the deadline to submit the evidence in [§ 404.935], the Appeals Council will send [them] a notice that explains why it did not accept the additional evidence and advise[] [them] of [their] right to file a new application."  20 C.F.R. § 404.970(c) (effective Jan. 17, 2017 to Dec. 15, 2020).  Here, the Appeals Council did not discuss whether Ms. Steinbook had good cause for missing the deadline to submit her additional evidence, disqualifying the

cumulative," material "if there is a reasonable possibility that it would have changed the outcome," and it is "chronologically pertinent" when it "relates to the period before the ALJ's decision." *Threet*, 353 F.3d at 1191 (alterations and internal quotation marks omitted). The regulations that require a claimant to show a "reasonable *probability* that the additional evidence would change the outcome of the decision" can be read as a heightened materiality standard. *See Bisbee v. Berryhill*, No. 18cv731 SMV, 2019 WL 1129459, at *3 n.5 (D.N.M. Mar. 12, 2019) (unpublished) (noting that the new regulations "heightens the claimant's burden to prove materiality:  whereas the previous test required merely a reasonable possibility of changing the outcome, now it requires a reasonable probability of changing the outcome").

The Commissioner argues that the Court "must determine whether evidence submitted to the Appeals Council renders the ALJ's decision unsupported by substantial evidence." Doc. 24 at 19 (citing *Vallejo v. Berryhill*, 849 F.3d 951, 955 (10th Cir. 2017)). The Court does not agree that this is the proper standard of review. In *Vallejo*, the Tenth Circuit held that when the Appeals Council accepts and considers additional evidence submitted by a claimant, it becomes a part of the record to be considered by the Court in performing a substantial evidence review. 849 F.3d at 955. But this case is distinguishable from *Vallejo*. Here, the Appeals Council explicitly declined to "exhibit" the additional evidence and found that it "d[id] not show a reasonable probability that it would change the outcome of the decision." AR 2. The "reasonable

---

evidence only on the basis that it "d[id] not show a reasonable probability that it would change the outcome of the decision." AR 2. Moreover, the Commissioner does not contend that Ms. Steinbook lacked good cause for the untimely submission of Dr. Baum's reports. Consequently, the Court will forgo a good-cause analysis here. *See Emmons v. Saul*, No. 19cv102 KBM, 2020 WL 376708, at *5 (D.N.M. Jan. 23, 2020) (declining to consider whether the plaintiff had good cause for failing to submit his additional evidence earlier, where the Appeals Council rejected the additional evidence based upon a lack of chronological pertinence rather than a lack of good cause).

probability" standard is one that "relates to whether evidence qualifies for consideration (and therefore review by the Appeals Council) and does not indicate how the Appeals Council evaluated the evidence in conjunction with the rest of the record." *Holder v. Berryhill*, No. 17cv1206 LF, 2019 WL 2716758, at *4 (D.N.M. June 28, 2019) (citing *Threet*, 353 F.3d at 1191–92; *Bisbee*, 2019 WL 1129459, at *3 & n.5).  Thus, in determining that Ms. Steinbook's additional evidence did not satisfy the reasonable probability standard or merit exhibiting, the Appeals Council implicitly disqualified the evidence from consideration in a substantial evidence review.  *See Secatero v. Saul*, No. 19cv87 SCY, 2020 WL 419463, at *5 (D.N.M. Jan. 27, 2020) (rejecting the Commissioner's argument that the Appeals Council actually "considered" the additional evidence and concluding instead that the Council's "dismissal of the additional evidence's import [under the 'reasonable probability' standard] indicate[d] that it ultimately found the evidence did not qualify for consideration at all").

The Appeals Council's refusal to consider Ms. Steinbook's additional evidence has implications for this Court on review.  Because the Appeals Council did not consider the additional evidence in conjunction with a review of the entire record, the Court may not consider the additional evidence in a review of the denial of benefits "under the deferential substantial-evidence standard." *Chambers v. Barnhart*, 389 F.3d 1138, 1143 (10th Cir. 2004).  Instead, the Court is constrained to determine, under *de novo* review, whether the Appeals Council erroneously refused to consider qualifying additional evidence.  *See Secatero*, 2020 WL 419463, at *5.  If so, "the case must be remanded so that the Appeals Council may evaluate the ALJ's decision in light of the completed record." *Id*.  In short, the proper inquiry is whether the additional evidence qualifies as new, material, and chronologically pertinent.  *See Krauser*, 638 F.3d at 1328.  Plaintiff bears the burden of establishing that these factors are met.  *See, e.g.,*

*Bisbee*, 2019 WL 1129459, at *3 n.5 (noting "claimant's burden" to establish satisfaction of § 404.970(a)(5) factors).

Ms. Steinbook argues that the Appeals Council erred by failing to consider the opinion of Dr. Steven Baum.  Doc. 20 at 26.  However, she fails to meet her burden of proof to show that each of the factors required to merit consideration by the Appeals Council have been satisfied. Ms. Steinbook makes no argument that the material is new, or "not duplicative or cumulative." *See* Doc. 20 at 26; Doc. 25 at 9–10; *Threet*, 353 F.3d at 1191.[14]  Ms. Steinbook also makes no argument that the material is "chronologically pertinent."  *See id*.  Finally, Ms. Steinbook makes only a skeletal argument that Dr. Baum's opinion is "material," that is, that there is "a reasonable probability that it would have changed the outcome."  *See id*.

Ms. Steinbook argues that had Dr. Baum's opinion been considered, it "would clearly have changed the outcome of the case."  *Id*.  However, she does not adequately explain why it would have changed the outcome of the case.  The only assertions she makes about Dr. Baum's opinion is that it "largely confirm[s CNP] Gilmore's findings" (Doc. 20 at 26), that Dr. Baum performed "objective tests that the Administration claims were wanting from [CNP] Gilmore" (Doc. 25 at 9), and that Dr. Baum's opinions are "fundamentally consistent with those of Dr. Pa[]terson and [CNP] Gilmore including that her pain exacerbates her psychiatric symptoms," (Doc. 25 at 10).  Ms. Steinbook does not develop these assertions to show how crediting Dr. Baum's opinion would have changed the outcome of the case.  As the Commissioner points out, "the same evidence that the ALJ found was inconsistent with [CNP] Gilmore's opinion was also inconsistent with Dr. Baum's opinion (*see* [AR] 28).  That is, Dr. Baum's opinion is inconsistent

---

[14] Ms. Steinbook's assertion that the material "did not exist at the time of the hearing," by itself, is not sufficient to show that the material is new.  *See* Doc. 25 at 10.  In order to show the material is new, Ms. Steinbook also must show the material is not duplicative or cumulative.

with the 'the evidence showing no hospitalizations, effective treatment, cooperative behavior, appropriate affect, unremarkable thought content, correct orientation, and normal fund of knowledge' ([AR] 28)." Doc. 24 at 21.  Ms. Steinbook does not respond to this argument in her reply.  Ms. Steinbook thus fails to meet her burden of proof to show how Dr. Baum's opinion has a "reasonable probability" of "chang[ing] the outcome of the decision."  20 C.F.R. § 404.970(a)(5).

### C.  The ALJ did not fail to properly consider Ms. Steinbook's symptoms.

Ms. Steinbook argues that the ALJ failed "to properly consider [her] symptom allegations in light of the impact of depression, anxiety, [and] obesity on pain."  Doc. 20 at 27.  Although not a paragon of clarity, she appears to raise two arguments:  (1) the ALJ failed to meaningfully consider her obesity; and (2) the ALJ erred by failing to consider that she is "poor at coping with pain."  *Id*.[15]  For the reasons explained below, the Court finds that neither of these arguments has merit.

First, the ALJ adequately considered Ms. Steinbook's obesity throughout the sequential evaluation process.  Pursuant to SSR 19-2p, the ALJ "must consider the limiting effects of obesity when assessing a person's RFC. . . .  As with any other impairment, [the ALJ] will explain how [he or she] reached [his or her] conclusion on whether obesity causes any limitations."  SSR 19-2p, 2019 WL 2374244, at *4 (May 20, 2019).[16]

---

[15] The Commissioner's response explains the six reasons that the ALJ "reasonably found that [Ms. Steinbook's] reported symptoms were inconsistent with the other evidence."  Doc. 24 at 7–11.  The Court, however, does not read Ms. Steinbook's brief as raising such a broad challenge to the ALJ's findings.  The Court, therefore, addresses only the narrow questions raised in Ms. Steinbook's brief.  *See* Doc. 20 at 27.

[16] Ms. Steinbook cites SSR 02-1p.  Doc. 20 at 15–16, 27.  However, SSR 19-2p rescinded and replaced SSR 02-1p, effective May 20, 2019.  *See* SSR 19-2p, 2019 WL 2161798, at *22924 (May 20, 2019).

Ms. Steinbook argues that "[t]he ALJ does not explain her obesity finding at all other than to state that she considers obesity generally." Doc. 20 at 27. This is not true. At step two, the ALJ determined that morbid obesity was a severe impairment. AR 22. At step three, the ALJ stated that she considered obesity "in accordance with SSR 19-2p" and found that it did not meet a listed impairment, but "factored the effect of [her] obesity into the [RFC]." AR 23. The ALJ then discussed obesity throughout her assessment of Ms. Steinbook's RFC. AR 25–29. The ALJ noted that Ms. Steinbook alleged morbid obesity and testified that "she experiences physical and psychological difficulties due to obesity." AR 26. The ALJ then stated that

> Although the record shows morbid obesity and obstructive sleep apnea, it shows no abnormal pulmonary function testing, no abnormal cardiovascular testing, and minimal evidence of associated complications (Exhibits 4F, p. 12, 16; 22F, p. 226). While the evidence shows body mass index (BMI) over 50, it shows unremarkable cardiovascular and respiratory sounds, unremarkable electrocardiogram, full range of motion of all extremities, and generally unremarkable gait (Exhibits 4F, p. 28; 7F, pp. 5-6; 8F, p. 53; 10F, pp. 13, 20, 41, 53; 21F, p. 5; 22F, pp. 163, 165). Additionally, while the evidence shows bariatric recommendations, it shows no recommended surgery (Exhibit 12F, p. 55).

AR 27. Finally, the ALJ found that "some degree of ambulatory and postural limitation is consistent with the evidence showing history of surgery, abnormal imaging results, and BMI over 50." AR 28. In part because of limitations posed by her obesity, the ALJ found Ms. Steinbook had an RFC limited to sedentary work and limited to only occasional balancing, kneeling, crouching, and climbing ramps and stairs; and never stooping, crawling, or climbing ladders, ropes, or scaffolds. AR 25.

Ms. Steinbook argues that the ALJ did not consider obesity in considering Dr. Paterson's and CNP Gilmore's opinions. Doc. 20 at 27 ("The ALJ never meaningfully considers obesity in evaluating the opinion evidence."). The Court does not find this argument persuasive. The Court already has determined that the ALJ's reasons for finding Dr. Paterson's and CNP

Gilmore's opinions unpersuasive were free from legal error and supported by substantial evidence. The Court also already has determined that the ALJ adequately considered Ms. Steinbook's obesity throughout the sequential evaluation process. Ms. Steinbook makes broad, undeveloped assertions of error, but develops no detailed argument that the ALJ failed to adequately consider obesity at any step of the sequential evaluation process, or in assessing her symptoms, or in assessing the medical opinions in this case. The Court finds no error in the ALJ's consideration of Ms. Steinbook's obesity.

Second, the ALJ adequately considered Ms. Steinbook's depression and anxiety, as well as how these impairments affect her pain. Ms. Steinbook asserts that the ALJ failed to consider the fact that she was "poor at coping with pain." Doc. 20 at 27. Ms. Steinbook argues that Dr. Paterson, CNP Gilmore, and Dr. Baum "agree that depression and anxiety affect[] the way she feels pain and the limitations imposed by the same." *Id*. She claims that neither the ALJ nor the Appeals Council explained why they "disregarded" this shared opinion. *Id*. The Court does not find this argument persuasive. The Court already has determined that the ALJ's reasons for finding Dr. Paterson's and CNP Gilmore's opinions unpersuasive were free from legal error and supported by substantial evidence. The Court also already has determined that the Appeals Council did not err in its treatment of Dr. Baum's opinion. Ms. Steinbook claims that "the shared opinion that [she] is poor at coping with pain finds much support in the record," but the only evidence she cites is a "well-documented history of abnormal mental status examinations for limited insight/judgment, impaired sleep, impaired attention, mood swings, and impulsivity" and the fact that she is "morbidly obese with a BMI approaching 50." *Id*. The ALJ adequately considered her abnormal mental status exams in assessing her mental RFC. *See* AR 27 (detailed discussion of mental RFC assessment), AR 28 (detailed discussion of medical opinions related to

mental functioning), and AR 29 (discussion of opinions of state agency psychological consultants). As discussed above, the ALJ also adequately considered her obesity in assessing her RFC. The Court finds no error in the ALJ's consideration of Ms. Steinbook's depression, anxiety, or pain.

## VI.    Conclusion

For the reasons stated above, the Court finds that the ALJ applied the correct legal standards and that her decision is supported by substantial evidence. None of Ms. Steinbook's arguments have merit.

IT IS THEREFORE ORDERED that Claimant's Motion to Reverse and/or Remand (Doc. 20) is DENIED.

IT IS FURTHER ORDERED that the Commissioner's final decision is AFFIRMED, and this case is dismissed with prejudice.

Laura Fashing
United States Magistrate Judge
Presiding by Consent